IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JULIE CHOLLY, on behalf of herself and all others similarly situated, ) ) ) Plaintiff, ) v. ) ) UPTAIN GROUP, INC., and ALERE HEALTH, LLC, ) ) ) Defendants. ) | Case No. 15 C 5030 Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Plaintiff Julie Cholly, on behalf of herself and all others similarly situated, has brought a one count third amended putative class action complaint ("complaint") against defendants Uptain Group, Inc. ("Uptain") and Alere Health, LLC ("Alere"), alleging that defendants violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et. seq. Defendants have moved to dismiss the complaint (Doc. 122) and to strike plaintiff's proposed classes (Doc. 124). For the reasons discussed below, defendants' motion to dismiss is denied but the motion to strike is granted.

## **BACKGROUND**[1]

At an unspecified time, plaintiff incurred a debt (the "Debt") to Alere, a medical services provider. Alere subsequently hired Uptain, a debt collection service, to collect the Debt from plaintiff. According to the complaint, on December 16, 2013, Uptain contacted plaintiff on her cellular telephone using an automatic telephone dialing system. During that telephone call,

---

[1]The following facts are taken from plaintiff's complaint and are assumed to be true for purposes of defendants' motion to dismiss. See Murphy v. Walker, 51 F.3d 714, 717 (7th Cir. 1995).

plaintiff allegedly told Uptain to stop calling her and informed Uptain that she would be filing for bankruptcy. The complaint further alleges that "[d]espite Plaintiff's clear and unambiguous instruction to Uptain to stop calling her, Uptain told Plaintiff that she must provide the bankruptcy case number in order for Uptain to stop calling." Following this December 16, 2013, call, Uptain allegedly "placed many more telephone calls to plaintiff's cellular telephone using an automatic telephone dialing system."

Seven months later, on July 31, 2014, plaintiff filed a Voluntary Petition for Chapter 7 Bankruptcy, listing Alere as one of her Schedule F creditors. The Petition did not list her claims against Uptain or Alere on her schedule of assets. The complaint alleges that on August 6, 2014, the bankruptcy court sent Alere, via first class mail, notice of plaintiff's bankruptcy petition, stating that an automatic stay was in place for all collection actions against plaintiff. Despite the stay, which plaintiff alleges barred Alere from contacting her, Uptain allegedly contacted plaintiff for non-emergency reasons, "with a pre-recorded or artificial voice on plaintiff's cellular telephone on behalf of Alere on numerous occasions between September 2014 and May 2015." The complaint alleges that neither defendant had consent to contact plaintiff.

## DISCUSSION

### I. Motion to Dismiss

Defendant first argues that plaintiff lacks standing under Article III of the Constitution, which limits federal judicial power to certain cases and controversies. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Article III standing has three elements: (1) the plaintiff must have suffered an injury in fact, an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) the injury must be

fairly traceable to the challenged action of the defendant; and (3) it must be redressable by a favorable decision. Id. at 560-61. Relying on the Supreme Court's recent opinion in Spokeo v. Robbins __ U.S. __, 136 S.Ct. 1540 (2016), defendant argues that plaintiff has failed to allege a concrete harm, and instead merely asserts a bare procedural violation of 47 U.S.C. § 227 that is insufficient to confer Article III standing. The court disagrees.

In Spokeo, the Supreme Court explained that concrete and particularized are separate and distinct concepts, and that both must exist for standing. Spokeo, 136 S.Ct. at 1548-50. To be concrete the injury must be "de facto," meaning it must actually exist. Id. at 1548. "When we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term – 'real' and not 'abstract.'" Id. "'Concrete' is not, however, synonymous with 'tangible.'" Id. at 1549. The Court noted that both history and the judgment of Congress play important roles in determining whether an intangible injury constitutes an injury in fact. Id. But even though "Congress may elevate to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in the law," a plaintiff does not automatically satisfy the "injury in fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation." Id. Thus, plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." Id.

As the Court noted, the violation of a procedural right guaranteed by statute can be sufficient in some circumstances to constitute a concrete injury, in which case a plaintiff need not allege any additional harm other than what Congress has identified. Id. In other cases,

3

however, a plaintiff would need to allege more than a mere violation of a procedural right, because the violation may not result in any harm. Id. The Court's point is not that a statutory violation cannot constitute an injury in fact, but "that where the bare violation of a statute conferring a procedural right could cause a congressionally identified harm or material risk of harm and just as easily could not, it is not sufficient simply to allege that the statute at issue was violated." A.D. v. Credit One Bank, N.A., 2016 WL 4417077, *6 (N.D. Ill. Aug. 19, 2016).

In the instant case, the court concludes that the allegations of receipt of the allegedly unlawful telephone calls are sufficient to allege a concrete injury. Although the Seventh Circuit has not yet addressed this issue, all of the district courts within this circuit that have reached the issue have held that a violation of the TCPA gives rise to a concrete injury under Article III. See Wilkes v. CareSource Management Group Co., 2016 WL 7179298, *3 (N.D. Ill. Dec. 9, 2016) (listing cases). This court adopts the reasoning in those cases, and in particular, Judge Kennelly's analysis in Arranda v. Caribbean Cruise Line, Inc., 2016 WL 4439935, *5-6 (N.D. Ill. Aug. 23, 2016):

> The TCPA section at issue does not require the adoption of procedures to decrease congressionally-identified risks. Rather § 227 of the TCPA prohibits making certain kinds of telephonic contact with consumers without first obtaining their consent. It directly forbids activities that by their nature infringe privacy-related interests that Congress sought to protect by enacting the TCPA. There is no gap – there are not some kinds of violations of § 227 that do not result in the harm Congress intended to curb, namely, the receipt of unsolicited telemarketing calls that by their nature invade the privacy and disturb the solitude of their recipients.
>
> . . .
>
> In contrast to statutes that impose obligations regarding how one manages data, keeps records, or verifies information, § 227 of the TCPA directly prohibits a person from taking actions directed at consumers who will be actively touched by that person's conduct. It does not matter whether plaintiffs lack additional tangible harms like loss of cell phone battery life, actual annoyance, and financial

4

losses; Congress has identified that such unsolicited telephonic contact constitutes an intangible, concrete harm, . . . .

Based on this reasoning, the court concludes that plaintiff has alleged such concrete harms identified by Congress and that she has standing to bring her claims.

Next, defendants argue that plaintiff is judicially estopped from alleging violations of the TCPA for calls made prior to her filing for bankruptcy because those claims are property of the bankrupt estate. "Judicial estoppel is a flexible equitable doctrine designed to prevent 'the perversion of the judicial process.'" Grochocinski v. Mayer, Brown Rowe & Maw, LLP, 719 F.3d 785, 795 (7th Cir. 2013) (quoting In re Cassidy, 892 F.2d 637, 641 (7th Cir. 1990)). It prevents courts from "being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories." Id. (quotations omitted). The doctrine is "not reducible to any general formulation of principle and accordingly does not lend itself to rigid rules." Id. (quotations omitted).

In the instant case, there is nothing to suggest that plaintiff was attempting to manipulate or pervert the litigation process, or has impaired the integrity of the court by failing to initially list her potential claim against defendants. Indeed, when alerted, she move to amend her schedule of assets, and the bankruptcy trustee has now abandoned any interest in the claims. Under these circumstances, the court declines to exercise its discretion to estop her from asserting her claims.

Consequently, for the reasons stated above, defendant's motion to dismiss is denied.

## II. Motion to Strike Plaintiff's Proposed Classes

In her complaint, plaintiff proposes the following class definition[2]:

1) All persons in the United States (2) to whose cellular telephone number (3)Uptain placed a non-emergency telephone call (4) using an artificial or prerecorded voice and/or an automatic telephone dialing system (5) on or after June 9, 2011(6) with respect to a debt allegedly owed to Alere (7) where Uptain did not have express consent to call said cell phone numbers.

Direct Revocation Sub-class

(1) All persons in the United States (2) to whose cellular telephone number (3) Uptain placed a non-emergency telephone call (4) using an artificial or prerecorded voice and/or an automatic telephone dialing system (5) on or after June 9, 2011 (6) with respect to a debt allegedly owed to Alere (7) where Uptain was directly informed to stop calling or cease communication.

Defendant has moved to strike the proposed class. Rule 23(c)(1)(A) requires the court to determine whether to certify an action as a class action "[a]t an early practicable time." Rule 23(d)(1)(D) provides: "In conducting an action under this Rule, the court may issue orders that: . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly . . ." District courts, both within this district and others, have held that a motion to strike class allegations, made pursuant to these provisions, is an appropriate devise to determine whether the case will proceed as a class action. <u>Wright v. Family Dollar, Inc.</u>, 2016 WL 4962838 (N.D. Ill. Nov. 30, 2010).

In the instant case, plaintiff's complaint asserts claims based only on telephone calls made to her cellular phone after she had expressly revoked her consent. Because she had apparently originally given consent, she cannot represent a class of persons who received calls

---

[2]The complaint also proposes a "bankruptcy stay sub-class," but acknowledges that the court has dismissed her revocation claims based on written notices from the bankruptcy court, and that the sub-claim is included solely for purposes of preserving the issue for appeal.

from Uptain where Uptain did not have express consent. Her claims would not be typical to those persons. Fed. R. Civ. P. 23(a).

Plaintiff also attempts to represent a sub-class of persons who received calls from Uptain after "Uptain was directly informed to stop calling or cease communication." The party seeking class certification bears the burden of proving that the proposed class meets the numerosity, commonality, typicality and adequacy of representation requirements of Fed. R. Civ. P. 23(a). Failure to satisfy even one of the elements precludes class certification. Harriston v. Chicago Tribune Co., 992 F.3d 697, 703 (7th Cir. 1993). In addition, the proponent (plaintiff in the instant case) must satisfy one of the conditions of Rule 23(b). Szabo v. Bridgeport Machines, Inc., 249 F.3d 672, 676 (7th Cir. 2001).

Although the complaint does not so specify, it is obvious that plaintiff is bringing her action under Rule 23(b)(3), which permits certification if "the court finds that the question of law or fact common to class members predominates over any question affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." This predominance requirement is satisfied when common questions represent a significant aspect of a case and can be resolved as to all class members in a single adjudication. Woolfkiel v. Intersection Insurance Service, Inc., 303 F.R.D. 287, 293 (N.D. Ill. 2014) (citing Messner v. Northshore Univ. HealthSsystem, 669 F.3d 802, 815 (7th Cir. 2012)). If, on the other hand, proposed class members will need to present evidence that varies from member to member to make a prima facie showing on a given question, then it is an individual question. Id.

In Woolfkiel, Judge Zagel analyzed a putative revocation class similar to the class proposed in the instant case, and concluded that the class failed to satisfy the Rule 23(b)(3) predominance requirement. "In order to determine whether each potential class member did in fact revoke his or her prior consent at the pertinent time, the Court would have to conduct class-members specific inquiries for each individual. The class members would not be able to present 'the same evidence that will suffice for each member to make a prima facie showing' at the recipients of defendants' telemarketing calls had validly revoked his or her prior consents." Woolfkiel, 303 F.R.D. at 293-94 (quoting Messner, 669 F.3d at 815).

This court agrees with Judge Zagel's analysis and concludes that the individual inquiries necessary to determine class membership will "inevitably predominate" over any common questions of fact. Id. Consequently, the proposed revocation class fails to satisfy Rule 23(b)(3), and the class allegations are stricken. This case must proceed on an individual basis only.

## CONCLUSION

For the reasons decided above, defendants' motion to dismiss (Doc. 122) is denied. Defendants are directed to answer the third amended complaint on or before February 21, 2017. Defendants' motion to strike (Doc. 124) is granted. The court orders that the case proceed on an individual basis. This matter is set for a report on status on February 28, 2017, at 9:00 a.m.

**ENTER:** February 1, 2017

_Robert W. Gettleman_
**Robert W. Gettleman**
**United States District Judge**